[Cite as *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 2015-Ohio-435.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE, ex rel. MIDVIEW LOCAL
SCHOOL DISTRICT BOARD OF
EDUCATION

      Appellant

      v.

OHIO SCHOOL FACILITIES
COMMISSION and OHIO FACILITIES
CONSTRUCTION COMMISSION

      Appellees

C.A. No.      14CA010596

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     14-CV-182579

DECISION AND JOURNAL ENTRY

Dated: February 6, 2015

BELFANCE, Presiding Judge.

{¶1} Plaintiff-Appellant Midview Local School District Board of Education ("Midview") appeals the judgment of the Lorain County Court of Common Pleas dismissing its complaint for lack of subject matter jurisdiction. For the reasons set forth below, we reverse and remand the matter for further proceedings.

I.

{¶2} Appellee Ohio School Facilities Commission ("Commission") is an independent agency within the Appellee Ohio Facilities Construction Commission. R.C. 3318.30(A). The Commission administers "the provision of financial assistance to school districts for the acquisition or construction of classroom facilities in accordance with section 3318.01 to 3318.33 of the Revised Code." R.C. 3318.30(A). The Commission is responsible for periodically

assessing the classroom facility needs in the state in order to identify districts in need of new or renovated facilities and to identify the costs of such construction or acquisition to the district. *See* R.C. 3318.02(A). These on-site assessments are conducted beginning with the districts with the lowest adjusted valuation per pupil. *See* R.C. 3318.02(C); R.C. 3318.011. In conducting the on-site evaluations, the Commission must determine the needs of the district for additional facilities, the number of facilities to be included in the project, the basic project cost of those facilities, the amount of the basic project cost the district can supply, and the amount to be supplied by the state. R.C. 3318.03(B). This program contained within R.C. 3318.01 to 3318.20 will be referred to as the Classroom Facilities Assistance Program ("CFAP").

{¶3} Nonetheless, if a district wishes to begin the process of constructing or acquiring classroom facilities prior to the time it is eligible to receive funding under CFAP, it can do so under the Expedited Local Partnership Program ("ELPP") outlined in R.C. 3318.36. The Commission is authorized to conduct an on-site evaluation of "any school district whose district board adopts a resolution certifying to the commission the board's intent to participate in [ELPP]." R.C. 3318.021. Those districts may then enter into an agreement with the Commission "under which the board may proceed with the new construction or major repairs of a part of the district's classroom facilities needs, as determined under sections 3318.01 to 3318.20 of the Revised Code, through the expenditure of local resources * * *." R.C. 3318.36(B)(1). The district can apply the expenditure of those local resources "toward[s] meeting the school district's portion of the basic project cost of the total of the district's classroom facilities needs * * * when the district becomes eligible for state assistance under [CFAP] * * *." R.C. 3318.36(B)(1). When the district becomes eligible for CFAP, the Commission conducts a new assessment, recalculates the district's share of the cost, and includes

in the basic project costs the amounts already expended by the district under ELPP. *See* R.C. 3318.36(E)(1). The amounts expended by the district under ELPP are then applied to the district's share of the basic project cost. R.C. 3318.36(E)(1).

{¶4} In 2000, the Commission entered into an agreement with Midview in which the Commission acknowledged it would perform an evaluation of the school district's classroom facilities, prepare a master plan to address the district needs with respect to classroom facilities, and to help identify possible parts of the plan that Midview could construct using local funds under the ELPP. Based on the on-site evaluation, it was determined that Midview would be responsible for 55% of the basic project cost and the state would fund 45%. Under the ELPP, Midview would construct three new elementary schools. Midview completed construction of the three elementary schools in 2005. Subsequent to completion, Midview began noticing ice-damming and air/water infiltration problems with the roofs of the three new schools. In July 2009, Midview entered into a CFAP agreement with the Commission. The Commission, however, did not include remediation of the defects in the roofs in the CFAP phase or include it in the new assessment. In 2011, while work under the CFAP phase was under way, Midview brought the defects in the roofs to the attention of the Commission's project administrator but the Commission failed to address the defects. In September 2013, Midview expressly requested that the Commission include the defects in the CFAP phase. In October 2013, the Commission denied the request, indicating that "'ELPP projects are district projects and remedial work and recovery for ELPP issues is a school district responsibility.'"

{¶5} In January 2014, Midview filed a three count complaint against the Ohio Facilities Construction Commission and the Commission seeking a writ of mandamus, or in the alternative, a declaratory judgment, and equitable restitution. The Ohio Facilities Construction

Commission and the Commission filed a motion to dismiss based on lack of subject matter jurisdiction and for failure to state a claim. Midview responded in opposition, and an oral hearing was held. Ultimately, the trial court concluded that it was "without jurisdiction to rule upon a complaint in mandamus or for declaratory judgment wherein the plaintiff, directly or indirectly, seeks to recover money damages against the state of Ohio or against statutorily created agencies, including defendants in this matter. The complaint in mandamus and for money damages is dismissed."

{¶6} Midview has appealed, raising three assignments of error for our review.[1] As they are all related, they will be addressed together.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ITS DISMISSAL HOLDING THAT IT LACKED JURISDICTION TO HEAR APPELLANT'S PETITION FOR WRIT OF MANDAMUS AGAINST A STATUTORILY CREATED AGENCY OF THE STATE OF OHIO.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FINDING THAT THE BOARD'S PETITION FOR WRIT OF MANDAMUS, DIRECTLY OR INDIRECTLY, SEEKS "MONEY DAMAGES" FROM THE STATE OF OHIO OR ONE OF ITS STATUTORILY CREATED AGENCIES.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ITS DISMISSAL HOLDING THAT IT LACKED JURISDICTION TO HEAR APPELLANT'S COMPLAINT FOR DECLARATORY JUDGMENT.

---

[1] We note that as the trial court dismissed the complaint, it is also dismissed Midview's claim for equitable restitution. None of Midview's assignments of error challenge that determination, and, thus, the propriety of that action is not before us.

{¶7} Midview asserts in its first assignment of error that the trial court erred in concluding it lacked jurisdiction to hear its petition for a writ of mandamus. It asserts in its second assignment of error that the trial court erred in concluding that Midview's petition for mandamus sought money damages. Midview maintains in its third assignment of error that the trial court erred in concluding that it lacked jurisdiction to hear Midview's claim for declaratory judgment.

{¶8} We note that the only issue before this Court is whether the trial court erred in dismissing the complaint for lack of subject matter jurisdiction. While the Ohio Facilities Construction Commission and the Commission sought to dismiss the matter due to lack of subject matter jurisdiction *and* for failure to state a claim, it is clear that the trial court decided only that it lacked jurisdiction. This Court declines to review issues not yet resolved by the trial court in the first instance. *See Neura v. Goodwill Industries*, 9th Dist. Medina No. 11CA0052-M, 2012-Ohio-2351, ¶ 19. Additionally, the issue of whether Midview can succeed on any of its claims is not before us. In this appeal, we determine only that the trial court did have subject matter jurisdiction over Midview's petition for a writ of mandamus and claim for declaratory judgment. Accordingly, we reverse the trial court's dismissal of those claims.

{¶9} "A defendant may seek the dismissal of any claim for lack of subject matter jurisdiction under Civ.R. 12(B)(1)." *Romano Constr., L.L.C. v. B.G.C., L.L.C.,* 9th Dist. Summit No. 26469, 2013-Ohio-681, ¶ 6. "[I]n making a determination regarding subject matter jurisdiction, [t]he trial court is not confined to the allegations of the complaint, and [ ] may consider material pertinent to such inquiry without converting the motion into one for summary judgment." (Internal quotations and citations omitted.) *Id.* "We review a motion to dismiss pursuant to Civ.R. 12(B)(1) de novo, applying the same standard as the trial court but without

deference to the trial court's determination." *Bollenbacher v. Wayne Cty. Bd. of Commrs.*, 9th Dist. Wayne No. 11CA0062, 2012-Ohio-4198, ¶ 6. "Dismissal is inappropriate if any cause of action cognizable by the forum has been raised in the complaint." (Internal quotations and citation omitted.) *Romano Constr., L.L.C.* at ¶ 6.

{¶10} In the instant matter, the trial court concluded that both Midview's petition for a writ of mandamus and its claim for declaratory judgment were actually claims for money damages and, thus, found implicitly that the claims must be brought in the Court of Claims. *See Ohio Hosp. Assn. v. Ohio Dept. of Human Servs.,* 62 Ohio St.3d 97, 103 (1991).

{¶11} R.C. 2731.02 provides that "[t]he writ of mandamus may be allowed by the supreme court, the court of appeals, or the court of common pleas and shall be issued by the clerk of the court in which the application is made." Moreover, the Court of Claims "lacks statutory jurisdiction to consider mandamus actions under R.C. 2731.02." *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Fam. Servs.,* 114 Ohio St.3d 14, 2007-Ohio-2620, ¶ 19.

{¶12} "R.C. 2743.03 established the Court of Claims, vesting it with 'exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code.'" *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, ¶ 9. "A major purpose of the Court of Claims Act was to centralize the filing and adjudication of all claims against the state." (Internal quotations and citation omitted.) *Ohio Hosp. Assn.* at 103. "The Court of Claims was created to become the sole trial-level adjudicator of claims against the state, with the narrow exception that specific types of suits that the state subjected itself [to] prior to 1975 could be tried elsewhere as if the defendant was a private party." (Internal quotations and citation omitted.) *Id.* Thus, "[t]o the extent that the state has previously consented to be sued, [Chapter 2743] has no applicability." R.C. 2743.02(A)(1).

However, "R.C. Chapter 2743 does not divest other courts of this state of jurisdiction 'to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief.'" *Santos* at ¶ 9, quoting R.C. 2743.03(A)(2).

**{¶13}** Midview's petition for mandamus asserted that it had a "clear Constitutional, statutory, and contractual right" to have the Commission assess the classroom facilities needs of Midview, include the roof defects in the assessment, and have the Commission fund the state's share of the classroom facilities needs, including fixing the defective roofs. Specifically, Midview alleged that the Commission failed to address the defects in the assessment it conducted under CFAP phase of the project as required by R.C. 3318.36(E)(1). The petition further alleged that the Commission failed to address the defects when expressly requested to do so. In its prayer for relief, Midview asked that the trial court order the Commission to assess the classroom needs of Midview, to include the defects in the assessment, and to fund the state's share of the Midview's classroom facilities needs, including remediation of the defects. Nonetheless, the trial court determined it lacked subject matter jurisdiction because it concluded Midview's petition was actually a claim for money damages.

**{¶14}** When examining the issue of subject matter jurisdiction, we are mindful that the underlying merits of a claim are distinct from the question of the court's statutory or constitutional power to adjudicate the case. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11 (noting that "subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case[]"). In this regard, we note that the petition at issue was expressly set forth as a claim for mandamus over which the trial court, on its face, would have subject matter jurisdiction. *See* R.C. 2731.02. As noted above, the trial court determined it lacked subject

matter jurisdiction reasoning that the mandamus claim was merely a claim for damages. In order to decide whether this is a claim for money damages or is instead for equitable relief, we must examine the "essence" of the claim. *See Ohio Academy of Nursing Homes,* 114 Ohio St.3d 14, 2007-Ohio-2620, ¶ 15. The fact that monetary entitlement may ultimately ensue upon consideration of the merits of the mandamus claim, does not in itself transform the claim to one for money damages. *See id.*

{¶15} "Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." (Emphasis sic.) (Internal quotations and citation omitted.) *Id.* at ¶ 18. Specific remedies "represent a particular privilege or entitlement, rather than general substitute compensation." *Interim Healthcare of Columbus, Inc. v. Ohio Dept. of Admin. Servs.,* 10th Dist. Franklin No. 07AP-747, 2008-Ohio-2286, ¶ 15. "Consequently, a party seeks equitable relief when [t]he relief sought is the very thing to which the claimant is entitled under the statutory provision supporting the claim." (Internal quotations and citation omitted.) *Id.* at ¶ 16. "[A] claim that seeks to require a state agency to pay amounts it should have paid all along is a claim for equitable relief, not monetary damages." *Id.* at ¶ 17.

{¶16} Here, Midview sought to have the Commission perform duties it alleged were required under Chapter 3318 of the Ohio Revised Code. In particular, Midview claimed that the Commission was required to conduct an assessment. Thus, the starting point of this matter is whether Midview is entitled to any assessment at all. If there is a clear legal duty present to conduct the assessment, the next issue would be whether the Commission is required to include the defective roofs in the assessment. Thus, it appears that the essence of Midview's action is the notion that the Commission has a statutory duty of assessment that it has failed to complete.

Assuming Midview is correct about the Commission's duty, Midview is seeking its share of funding it is entitled to under Chapter 3318, not the payment of money damages. Given the foregoing, and the fact that the Court of Claims lacks statutory jurisdiction over mandamus actions under R.C. 2731.02, *see Ohio Academy of Nursing Homes* at ¶ 19, we conclude the trial court erred in concluding that it lacked subject matter jurisdiction to consider Midview's petition for a writ of mandamus.

{¶17} With respect to Midview's claim for declaratory judgment, "the Court of Claims generally lacks jurisdiction over declaratory judgment actions because, prior to the state's waiving immunity, parties were permitted to bring such actions against the state in the court of common pleas." *Interim Healthcare of Columbus, Inc.* at ¶ 12. Here, the trial court again concluded that Midview's claim was one for money damages.

{¶18} Midview's complaint alleged that, due to the Commission's failure to assess the needs of Midview, its failure to include the defects in the assessment, and the failure to fund the state's share of those expenses, Midview was entitled to declaration that the Ohio Facilities Construction Commission and the Commission violated Ohio law. In Midview's prayer for relief, it sought declarations that the Commission failed to assess the classroom facilities needs of Midview, failed to include the defective roofs in that assessment, and failed to fund the state's portion of the classroom facilities needs, including remediation of the defects.

{¶19} For reasons similar to those stated concerning the dismissal of Midview's petition for a writ of mandamus, we likewise conclude the trial court erred in concluding it lacked subject matter jurisdiction over Midview's claim for declaratory judgment. The heart of Midview's claim is an assertion that the Commission failed to comply with its duties under Chapter 3318 of

the Ohio Revised Code. Thus, we are unable to conclude from the materials before us that Midview's claims are, at their essence, claims for money damages against the state.

{¶20} We reiterate that we reach no conclusion with respect to whether a Civ.R. 12(B)(6) motion would be successful or with respect to whether Midview is entitled to any of the relief sought. We sustain Midview's assignments of error on the basis that the trial court erred in concluding that it lacked subject matter jurisdiction over Midview's mandamus and declaratory judgment actions.

## III.

{¶21} In light of the foregoing, we reverse the judgment of the Lorain County Court of Common Pleas and remand the matter for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.

APPEARANCES:

CHRISTOPHER L. MCCLOSKEY and TARIK M. KERSHAH, Attorneys at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and LEE ANN RABE, JAMES E. ROOK and JERRY K. KASAI, Assistant Attorneys General, for Appellees.